IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OCÉ FINANCIAL SERVICES, INC., )
                              )
            Plaintiff,        )
                              )
    v.                        )   No. 11 C 4696
                              )
FOX BLUEPRINTING COMPANY,     )
et al.,                       )
                              )
            Defendants.       )

## MEMORANDUM OPINION AND ORDER

This Court has just had its calendar graced by the random assignment of a lawsuit by Océ Financial Services, Inc. ("Océ") against equipment lessee Fox Blueprinting Company ("Fox Company") and lease guarantor David Fox ("Fox"). This memorandum opinion and order is issued sua sponte to address an issue that (at least figuratively) jumped off the pages of the Complaint and of the Term Rental Agreement ("Agreement") attached as Complaint Ex. A.

As might have been expected, the Agreement was executed by Fox Company at its home base in Salem, Oregon, while Fox himself signed the guaranty ("Guaranty," Complaint Ex. B), and his signature was notarized, in Salem as well. For its part, Océ's acceptance of the Agreement was signed by its Assistant Secretary Jack Scarpelli, with the location of that acceptance being unidentified in that document or the Complaint.

As is so frequently the case, the Agreement was a lengthy form document printed in a miniscule and tightly packed font, and both the Agreement and the Guaranty set out these two lines in

the same font just below the captions of those documents:

    OFSI Origination office:  5450 Cumberland Avenue, Chicago IL 60656
    OFSI Administrative office:  5600 Broken Sound Blvd., Boca Raton FL 33487

Those references to Chicago as the location of the "Origination office" (whatever that may mean) are the sole indication that the transaction had any connection to Illinois.  And that in turn has raised a question as to the appropriateness of Océ's reliance on a provision in each document as the predicate for its authority to bring this lawsuit in this District Court.

First, here is Agreement ¶16 in material part:[1]

> You and any Guarantor herein agree that this Contract will be deemed for all purposes to be fully executed and performed in the State of Illinois and will be governed by Illinois law.  You and any Guarantor expressly and irrevocably agree (a) that any and all legal disputes whatsoever concerning this contract, must be brought in the state or federal courts located in Chicago, Illinois and that such courts shall have the exclusive jurisdiction and authority to resolve such disputes; (b) to submit to the jurisdiction of the state and federal courts located in Chicago, Illinois, for purposes of resolving legal disputes concerning this contract, and to waive any and all objections to personal jurisdiction and/or to venue; and (c) to waive any right to trial by jury in legal disputes concerning this contract.  You and any guarantor further acknowledge and agree that subsections (a) through (c) are conditions precedent to and are material inducements to our entering into this contract with you and any guaranty with any guarantor.

As for the Guaranty, it designates Illinois as the "State of

---

[1] Both the next quotation and the language hereafter quoted from the Guaranty are reproduced, for easier reading, in the more customary upper and lower case, rather than employing all capital letters as some portions of the original documents do.

Venue" and states the following as part of its penultimate paragraph and as the last sentence of the ultimate paragraph (with the asterisks here separating those two provisions):

> Guarantors agree that all actions and proceedings relating directly or indirectly to this Guaranty may be litigated in the state or federal courts located in the State of Venue (as referenced above) and Guarantors submit to the nonexclusive jurisdiction of such courts. Guarantors acknowledge that such courts are convenient forums, and waive any defense based upon doctrines of venue or forum non conveniens or similar rules or doctrines.
>
> \*   \*   \*
>
> Legal rights and obligations hereunder shall be determined in accordance with the laws of the state of Illinois, without giving effect to the principles of conflict of laws thereof.

It must be recognized that those recitals alone do not answer the question as to the propriety of instituting this action in this District Court. And nothing is said in the Complaint or in either of the operative documents about such matters as the situs of Océ signatory Scarpelli, or as to the location from which the leased equipment emanated, or as to what is meant by "OFSI Origination office," or as to any other facts that would arguably connect the transaction to Illinois so as to support the appropriateness and enforceability of the language quoted from the two documents.

Less than three weeks ago the United States Supreme Court issued two opinions that took a fresh--and hard--look at the constraints that the Due Process Clause imposes on the exercise of in personam jurisdiction: J. McIntyre Mach., Ltd. v.

3

Nicastro, 79 U.S.L.W. 4684 (U.S. June 27, 2011) and Goodyear Dunlop Tires Corp., S.A. v. Brown, 79 U.S.L.W. 4696 (U.S. June 27, 2011).[2] To be sure, Justice Kennedy's plurality opinion for four Justices in McIntyre, 79 U.S.L.W. at 4686, citing Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982), refers briefly to "explicit consent" as one way in which a "person may submit to a State's authority." But the substantive discussion in McIntyre sets out several more trenchant statements that emphasize the basic principle that the boundaries of due process are marked out by what the defendant and not the plaintiff has done in, or in relation to, the forum state[3]--here, for example, are statements (none of which appears to fit these defendants) as to that fundamental underlying principle (id. at 4685, 4687, 4688):

> As a general rule, the exercise of judicial power is not lawful unless the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

\*      \*      \*

---

[2] Because neither the facts nor the holding in Goodyear had any bearing on the issues posed by this case, all of the discussion here will focus on McIntyre.

[3] Justice Kennedy's plurality opinion for four Justices was buttressed by an opinion by Justice Breyer, joined by Justice Alito, concurring in the judgment. That concurring opinion, though it dealt primarily with other aspects of the case, also focused on the conduct of the defendant who is sought to be subjected to the forum's in personam jurisdiction.

4

> The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct.
>
> \* \* \*
>
> Due process protects petitioner's right to be subject only to lawful authority.  At no time did petitioner engage in any activities in New Jersey that reveal an intent to invoke or benefit from the protection of its laws.

That overriding principle explains why a contractual forum-selection clause or choice-of-law-selection clause will not trigger unquestioning judicial acceptance.  Instead a material rational connection must be shown between any such designation and the underlying transaction.  That may or may not exist here (although this Court should not be misunderstood as expressing a substantive view on the matter at this point), and Océ must be prepared to demonstrate its existence.  Because this memorandum opinion and order is being issued contemporaneously with this Court's customary initial scheduling order, Océ will be expected to address the subject at or before that hearing.[4]

                                                /s/ Milton I. Shadur
                                  _____
                                  Milton I. Shadur
                                  Senior United States District Judge

Date:  July 15, 2011

---

[4] On that score it would plainly be better if Océ were to provide a written submission, supported by appropriate authority, before the initial status hearing, so that defense counsel and this Court will have had an opportunity to review the matter in advance.